UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| SYMANK BUSINESS SYSTEMS, | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:21-CV-0936-B |
| | § | |
| FEDEX GROUND PACKAGE SYSTEM, | § | |
| INC., | § | |
| | § | |
| Respondent. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Petitioner Symank Business Systems ("SBS")'s Motion to Vacate Arbitration Award (Doc. 2). For the reasons stated below, the Court **DENIES** the motion to vacate.

## I.

## BACKGROUND

A.    *The Parties' Dispute and Resulting Arbitration*

This is a case arising out of Respondent FedEx Ground Package System, Inc. ("FXG")'s termination of its business relationship with SBS and the arbitration that followed. Doc. 2, Pet'r's Mot., 1–2. SBS was a contractor hired to deliver packages for FXG. *Id.* at 2. The parties' relationship was governed by an Independent Service Provider Agreement ("ISP Agreement"), which contained an arbitration provision. *Id.* at 1–2. In 2018, FXG notified SBS that it intended to terminate the ISP Agreement. *Id.* at 2. The parties then entered into a pre-termination mutual settlement and release agreement ("Settlement and Release Agreement") wherein, "in consideration for not terminating the ISP Agreement immediately and releasing one another from all other claims, FXG would provide

SBS time to find suitable buyers to transfer the ISP Agreement." *Id*. at 1–2. However, FXG ultimately terminated the ISP without allowing SBS to transfer the agreement. *Id*. at 2. SBS filed suit against FXG, asserting claims for breach of the Settlement and Release Agreement, wrongful termination, wrongful refusal to consent to assignment, breach of the duty of good faith and fair dealing, and tortious interference with contract. *Id*. at 1–2.

Pursuant to the ISP Agreement, the dispute was submitted to arbitration with the Judicial Arbitration and Mediation Services ("JAMS"). Doc. 6, Resp., 7; *see* Doc. 2, Pet'r's Mot., 1 . The ISP Agreement's arbitration provision provided that the arbitrator could decide matters on dispositive motions, *see* Doc. 1-11, ISP Agreement, ¶ 16.5(A), and encompassed "any claim or controversy between the Parties arising since the effective date of this Agreement and . . . relating in any way to this Agreement and/or the relationship between the Parties resulting from this Agreement." *Id*. ¶ 16.3. The ISP Agreement also specified that the Agreement and its provisions were "governed by and construed in accordance with" Pennsylvania law. *Id*. ¶ 18.10.

Arbitration began in October 2019. Doc. 6, Resp., 7. "The discovery period in the arbitration ran from February through October 30, 2020[,] . . . [and] SBS and [FXG] each engaged in both written discovery and depositions." *Id*. SBS and FXG "agreed that the 'arbitrator shall have the authority to act upon motions for summary disposition.'" *Id*. (quoting Doc. 1-11, ISP Agreement, ¶ 16.5(A)). FXG filed its summary-disposition motion on November 20, 2020. *Id*. SBS's response to the motion was due on December 4, 2020, and a hearing for oral argument on the motion was set for December 17, 2020. *Id*. SBS did not respond by December 4, but on December 7, 2020, sought an extension of its time to respond until December 31, 2020. *Id*. FXG did not oppose SBS's request and the arbitrator extended the response deadline as requested. *Id*. On December 31, 2020, SBS filed

its response "as well as its own affirmative motion for summary disposition." *Id.* at 8; Doc. 2-10, SBS's Mot. Summ. Disposition. In support of its motion, SBS "submitted 450 pages of briefing and exhibits that it claimed demonstrated that [FXG]" was not entitled to summary disposition. Doc. 6, Resp., 8. *See generally* Doc. 2-10, SBS's Mot. Summ. Disposition. But SBS did not request additional "time to conduct discovery to develop facts" in support of its own claims or to preclude summary disposition for FXG. Doc. 6, Resp., 8.

The arbitrator set oral argument on both summary-disposition motions for January 14, 2021. *Id.* In preparation, both parties "submitted further briefing in support of their positions." *Id. See generally* Doc. 1-5, FXG's Reply; Doc. 1-6, SBS's Sur-Reply. SBS never asked to postpone the oral argument. *See* Doc. 2, Pet'r's Mot. (not claiming to have asked for a postponement before the scheduled hearing). However, during the January 14, 2021, hearing, "[a]fter about two hours of argument . . . SBS's counsel asked . . . whether the arbitrator would postpone a decision on [FXG's summary-disposition] motion to allow SBS to take a deposition of [FXG manager Ben Palumbo ("Palumbo")] . . . if the arbitrator was going to rule against SBS." Doc. 6, Resp., 8. The arbitrator denied SBS's request for the delay and additional deposition. *Id.* That same day, SBS filed an "Emergency Submission Directly Contradicting False Testimony and Argument, Potential Perjury, and Misleading Representations Regarding Respondent [FXG]'s Motion for Summary Disposition" ("Emergency Submission"), in which it claimed that FXG and Palumbo had presented "false—and potentially perjured—testimony" at the hearing when they stated that there was no written evidence that FXG ever consented to the assignments. Doc. 2-9, Emergency Submission, 1. The Emergency Submission included internal FXG correspondence that SBS claimed showed FXG's consent to the assignments and precluded summary disposition for FXG. *Id.* at 3, 4, 8–9, 11–12. On January 20,

2021, SBS also filed a motion to compel Palumbo's deposition and to delay the arbitrator's decision until after Palumbo was deposed. *See* Doc. 2-2, Arb. Decision, 1, 13.

Without separately ruling on SMS's motion to compel, on January 26, 2021, "[t]he arbitrator issued a 13-page decision . . . denying SBS's [summary-disposition] motion and granting [FXG]'s motion." Doc. 6, Resp., 9. The decision held that FXG's initial and final terminations of the ISP Agreement were lawful, FXG did not breach a duty of good faith under Pennsylvania law or tortiously interfere with SBS's contract with the intended assignees, and SBS's motion to compel deposition of a corporate designee was moot given the arbitrator's summary-disposition ruling. Doc. 2-2, Arb. Decision, 9–14. The arbitrator found that the assignment of SBS's contract under the ISP Agreement was not completed before FXG's final termination of that contract because certain conditions precedent to the assignment were not fulfilled, and that FXG lawfully terminated the agreement because SBS committed acts inconsistent with the ISP Agreement's "honesty and integrity" provision. *Id.* at 2–12.

SBS filed a motion to reconsider the arbitrator's ruling. Doc. 2-8, Mot. Recons. In this motion, SBS raised thirty-three points of error, claiming "each . . . , considered alone, . . . [would] require reconsideration" of the summary disposition. *Id.* at 2–16. FXG moved to strike the motion for reconsideration as outside proper JAMS procedures and alternatively moved that the motion should be denied. Doc. 7, Resp't's App., 56. The arbitrator denied the motion for reconsideration, ending the arbitration process. *Id.* at 62.

B.    *The Present Motion to Vacate Arbitration Award*

On April 26, 2021, pursuant to the Federal Arbitration Act ("FAA"), SBS filed its Complaint and Motion to Vacate Arbitration Award in this Court. Doc. 1, Compl.; Doc. 2, Pet'r's Mot. The

motion asserts "at least twenty-nine (29) separate points of error[,] . . . . [e]ach . . . sufficient to vacate the arbitration award" under 9 U.S.C. § 10(a)(3) or § 10(a)(4). *See* Doc. 2, Pet'r's Mot., 4–5. For simplicity's sake, the Court has grouped these points of error into seven broader arguments, stated below.

**1. Failure to Postpone Decision Pending Palumbo's Deposition.** *See id.* ¶¶ 1, 4, 14, 15, 17. SBS claims that the arbitrator violated § 10(a)(3) by refusing to postpone the hearing and summary-disposition decision until Palumbo could be deposed since Palumbo's testimony would allegedly have shown that material fact issues precluded summary disposition for FXG. *Id.* ¶ 4. SBS also claims Palumbo's deposition was necessary for it to "test the veracity of" statements contained in an anonymous letter on which the arbitrator apparently relied, *id.* ¶ 14, and to resolve "serious questions regarding the accuracy and validity of [an FXG internal investigative] report, which SBS demonstrated was backdated." *Id.* ¶ 15, 17.

**2. Erroneous Application of Pennsylvania Summary-Judgment Law.** *See id.* ¶¶ 1, 3, 6–7, 9, 11, 16, 19–21, 25–29. SBS claims that the arbitrator incorrectly applied the summary-judgment standard under Pennsylvania law by granting summary judgment for FXG, despite the presence of contested facts, on the issues of whether:

- FXG consented to the assignments. *See id.* ¶ 1.

- The assignments were completed before the agreement's termination. *See id.* ¶¶ 3, 11, 19–21, 29.

- SBS's actions constituted a material breach of the ISP Agreement's "honesty and integrity clause" and the ISP Agreement itself, justifying the termination. *See id.* ¶¶ 6, 25, 27–28.

- Aaron Symank ("Aaron")'s impersonation of a driver's former employer was justified. *See id.* ¶ 7.

- FXG improperly terminated the agreement in retaliation for Aaron's "provid[ing] an affidavit in another contractor's federal lawsuit against FXG." *Id.* ¶¶ 8, 26.

- FXG was contractually obligated "to extend the termination date of the ISP Agreement." *Id.* ¶ 9.

- SBS misused "[t]he badge of at least one former driver, Demetrick Bagley ("Bagley")." *Id.* ¶ 16.

**3. Erroneous Application of Pennsylvania Procedural Law**. *Id.* ¶ 23. SBS claims that the arbitrator inconsistently applied Pennsylvania procedural law "regarding the insufficiency of oral testimony" and the effect of "later created affidavits." *Id.*

**4. Considering Incompetent or Improper Evidence**. *See id.* ¶¶ 2, 5, 14–18, 24. SBS claims that the arbitrator considered and relied on incompetent or improper evidence, including:

- "[U]nsworn hearsay and reports submitted with no sworn verification." *Id.* ¶ 2.

- Evidence concerning "purported violations that occurred prior to September 11, 2018, which FXG waived by signing the [Settlement and Release Agreement]." *Id.* ¶ 5.

- "[A]n 'anonymous' letter purportedly drafted by . . . a former driver and manager for SBS." *Id.* ¶ 14.

- An allegedly "backdated" internal FXG investigative report finding that SBS allowed unauthorized drivers to use a former employee's ID badge. *Id.* ¶¶ 15–18.

- "[S]tatements made by SBS drivers Earl McCuin ("McCuin") and Jade Eccleston ("Eccleston")." *Id.* ¶ 18.

- "[A] spreadsheet purporting to contain . . . text message data," while refusing to compel production of the "native text messages." *Id.* ¶ 16.

- FXG's slogan "Safety above all." *Id.* ¶ 24

**5. Erroneous Factual Determinations**. *See id.* ¶¶ 12–13, 22. SBS claims that the arbitrator incorrectly weighed evidence, including by:

- Discounting FXG manager Chad Allen ("Allen")'s statements that the proposed assignees were "qualified" as "mere 'speculat[ion]' and 'opinions' about 'questions of law' regarding 'whether or not the conditions precedent to a binding contract have been met." *Id.* ¶ 12.

- Finding that Allen's testimony and assignment documents "signed by [Palumbo] on behalf of FXG" did not show that FXG granted consent for the assignments. *Id.* ¶ 13.

- Characterizing many of the allegations and facts contained in FXG's "Statement of Undisputed Facts" as "undisputed" when SBS "specifically disputed all the material facts at issue in this case." *Id.* ¶ 22

**6. Insufficiently Stating Factual Basis**. *See id.* ¶ 25. SBS claims that the arbitrator failed to fully detail the factual basis for its conclusion that SBS breached the ISP Agreement. *Id.* ¶ 25.

**7. Misapplication of the ISP Agreement**. *See id.* ¶¶ 4, 10. SBS claims that the arbitrator improperly applied the ISP Agreement by considering "certain conditions" of FXG's agreement to forebear from terminating its agreement with SBS that were set forth in the "contract termination notice," because the terms did not govern the dispute and "FXG waived those terms when it

consented to the transfers." *Id.* ¶ 10.  Additionally, SBS claims the arbitrator failed to correctly apply the terms of the ISP Agreement when it refused to allow SBS to depose Palumbo before deciding the summary-disposition motions. *Id.* ¶ 4.

SBS's motion is fully briefed and ripe for review. The Court considers it below.

## II.

## LEGAL STANDARD

A district court's "review of an arbitration award is extraordinarily narrow." *YPF S.A. v. Apache Overseas, Inc.*, 924 F.3d 815, 819 (5th Cir. 2019). Section 10(a) of the FAA "provide[s] the exclusive" grounds to vacate an award under the Act. *Citigroup Glob. Mkts., Inc. v. Bacon*, 562 F.3d 349, 353 (5th Cir. 2009) (citing *Hall St. Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 578, 581, 583, 590 (2008)). Under this section, a court may vacate an arbitration award only:

> (1) where the award was procured by corruption, fraud, or undue means;
> (2) where there was evident partiality or corruption in the arbitrators, or either of them;
> (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or
> (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

*Citigroup Glob. Mkts.*, 562 F.3d at 352 (quoting 9 U.S.C. § 10(a)).

"When arbitration involves the interpretation of a contract, a reviewing court will confirm the arbitration award so 'long as the arbitrator's decision "draws its essence" from the contract.'" *Ennis, Inc. v. Gildan Activewear SRL*, 2019 WL 3006630, at *4 (N.D. Tex. July 9, 2019) (quoting *Executone Info. Sys., Inc. v. Davis*, 26 F.3d 1314, 1320 (5th Cir. 1994)). "Therefore, the very deferential standard of review for an arbitrator interpreting a contract means that a reviewing court

'will uphold a decision that is rationally inferable' from the contract, 'even if the court believes the arbitrator seriously erred in his fact finding or contract interpretation.'" *Id.* at *4 (quoting *Delek Ref., Ltd. v. Loc. 202, United Steel*, 891 F.3d 566, 570 (5th Cir. 2018)). In conducting its review, the court "must resolve all doubts in favor of" the arbitration's validity. *YPF S.A.*, 924 F.3d at 818 (quoting *Rain CII Carbon, LLC v. ConocoPhillips Co.*, 674 F.3d 469, 472 (5th Cir. 2012)).

## III.

## ANALYSIS

Below, the Court considers whether SBS has carried its heavy burden to show that the arbitrator's award violated one of the enumerated grounds for vacatur. First, the Court addresses SBS's claim that the arbitrator's refusal to delay the hearing or the summary-disposition decision until after Palumbo's deposition justifies vacatur under § 10(a)(3). Next, the Court addresses SBS's other claims, which contend that the arbitrator exceeded her powers or so imperfectly executed them that vacatur is justified under § 10(a)(4). Finding that the Court may not vacate the award under either § 10(a)(3) or § 10(a)(4), the Court **DENIES** SBS's motion.

A.    *§ 10(a)(3)*

An arbitration award may be vacated pursuant to § 10(a)(3) if an arbitrator was "guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced." 9 U.S.C. § 10(a)(3). For the court to find that the arbitrator was "guilty of misconduct," the petitioner "must establish that there was no reasonable basis for the panel's refusal to postpone the hearing" or for its decision to exclude the evidence. *See Sungard Energy Sys. Inc. v. Gas Transmission Nw. Corp.*, 551 F. Supp. 2d 608, 613 (S.D. Tex. 2008) (citing

*Laws v. Morgan Stanley Dean Witter*, 452 F.3d 398, 400 (5th Cir. 2006)); *Hudgins v. Ameriprise Fin. Servs., Inc.*, 2018 WL 4717614, at *4 (N.D. Tex. Sept. 30, 2018) (noting that "unfair" exclusion of evidence was grounds for vacatur). In either case, "[t]he Fifth Circuit requires that a party seeking vacatur on § 10(a)(3) grounds demonstrate that an arbitrator's misconduct resulted in 'serious prejudice' to the party." *Ennis*, 2019 WL 3006630, at *4.

SBS claims that the arbitrator engaged in misconduct justifying vacatur under § 10(a)(3) when she "refused to postpone ruling on the motion for summary disposition to allow SBS to take [additional] depositions." Doc. 2, Pet'r's Mot., ¶ 4. According to SBS, these depositions "would have shed further light on the material fact issues already present in this case." *Id.* Specifically, SBS intended to depose "FXG's central witness, [Palumbo], who was under a deposition notice at the time the arbitrator made its ruling." *Id.* SBS states that, under the ISP Agreement—which "allows for three separate depositions by each party"—it was clearly entitled to depose Palumbo and that the arbitrator "did not have good cause for refusing to honor SBS's rights to discovery under the ISP Agreement." *Id.* Thus, SMS argues that the arbitrator's refusal to delay the January 14, 2021, hearing and to withhold her decision on the summary-disposition motions until after Palumbo's deposition "prejudiced the clearly defined rights of SBS." *Id.* SBS further argues that when the arbitrator ruled on the summary-disposition motions before Palumbo—a "material fact witness"—was deposed, she "failed to consider pertinent and material evidence[,]" also warranting vacatur under this provision. *See id.* at 2, ¶ 22. SBS repeats and amplifies this allegation in several of its points of error, claiming that the deposition would have generated evidence to create various material fact issues. *See id.* ¶¶ 4, 14, 14–18, 20, 22.

FXG first responds that SBS is not entitled to vacatur under § 10(a)(3) because there was no "hearing" for the arbitrator to refuse to postpone, "only oral argument." Doc. 6, Resp., 11. But even if the oral argument was a hearing, FXG asserts that "SBS did not show sufficient cause for a postponement." *Id.* FXG also claims that SBS did not request any delay in the proceedings until after more than two hours of oral argument, when it began to fear it would lose—which is not the sort of prejudicial situation envisioned by § 10(a)(3). *See id.* And FXG argues that "nothing prevented SBS from taking [Palumbo's] deposition, or any other discovery . . . during the eight-plus month discovery period that began in February and ended October 30, 2020," so any refusal to allow the late-requested deposition was not unfair. *Id.* at 11–12. Finally, FXG claims that Palumbo's deposition would not have revealed any facts to counter the arbitrator's findings that "SBS breached the parties' [ISP] Agreement by having unqualified persons drive . . . [and thus FXG] lawfully terminated that contract," such that even if the arbitrator did act improperly in refusing to compel the deposition, SBS was not prejudiced by the decision. *See id.* at 12.

First, the Court finds that SBS has not shown that the arbitrator unreasonably refused to delay a hearing to allow Palumbo's deposition, after a showing of good cause. Assuming that the oral argument was a hearing, the record shows that the arbitrator "could have concluded that [SBS] failed to present good cause for [its] delay." *See Laws*, 452 F.3d at 400 (citing *In re Arb. Between Trans Chem. & China Nat'l Mach. Imp. & Exp.*, 978 F. Supp. 266, 307 (S.D. Tex. 1997)). While SBS argued that it needed additional time to depose Palumbo, it neither requested an extension before the hearing, *see* Doc. 2-9, Emergency Submission, nor explained why Palumbo could not be deposed within the lengthy discovery period. *See id.* at 2 n.1 (claiming that FXG improperly prevented SBS from getting access to timely physical discovery but not explaining why Palumbo was not deposed);

Doc. 6, Resp., 7 (noting that discovery ran "from February through October 30, 2020"). SBS agreed to an Amended Scheduling Order stipulating that "[f]act witness depositions conclude [on] 10/30/20." Doc. 7, Resp't's App., 51. Furthermore, SBS's Emergency Submission indicates that Palumbo did give evidence. *See* Doc. 2-9, Emergency Submission, 2 (claiming that FXG "*peddled [Palumbo's] false testimony* to repeatedly advise this tribunal that no . . . written indication of consent [to the assignments] existed") (emphasis added). The arbitrator could have reasonably concluded that since Palumbo had already given evidence, delaying the hearing to allow his deposition—months after the deadline—would not have changed her decision. Finally, the arbitrator also "reasonably could have decided that further delay would be inequitable" because SBS waited until long after the fact-discovery deadline to schedule Palumbo's deposition and did not request the delay until the middle of oral argument. *See* Doc. 6, Resp., 8 (claiming that "[a]fter about two hours of argument . . . SBS's counsel asked, for the first time, whether the arbitrator would postpone a decision on [FXG's] motion to allow SBS to take a deposition of . . . Palumbo"); *c.f. Laws*, 452 F.3d at 400 (finding that an arbitrator might reasonably have concluded further delay was inequitable when a "[petitioner] waited more than three years (until only two months before the scheduled hearing) to institute any discovery").

Second, the Court finds that SBS has not shown that the arbitrator's refusal to hear evidence—if deciding the summary-disposition motions without allowing Palumbo's deposition can be construed as such—was so unfair as to constitute misconduct warranting vacatur. *See Gulf Coast Indus. Workers Union v. Exxon Co. USA*, 70 F.3d 847, 850 (5th Cir. 1995) (finding that an arbitrator's refusal to consider evidence was misconduct when he "prevented [the company] from presenting additional evidence [of a positive drug test result] by misleading it into believing that the

-12-

[test result was] admitted" and then used the company's "failure to present evidence that he told [it] not to present as a predicate for ignoring the test results"). Unlike in *Gulf Coast Industrial Workers Union*, SBS has not argued that the arbitrator misled it into believing that it did not need to depose Palumbo during the agreed fact-witness deposition period or that the arbitrator prevented it from submitting the evidence. *See* Doc. 2-9, Emergency Submission, 2 n.1 (arguing that a delay in deciding the motions pending Palumbo's deposition was necessary given "the grave unfairness of [FXG's] abuse of the professional courtesies given throughout the COVID-19 pandemic and accommodations due to its representations" regarding production of discovery). Nor did the arbitrator mislead SBS into believing that the parties' claims were not subject to summary disposition or that SBS need not refute FXG's arguments for summary disposition. To the contrary, the arbitrator allowed SBS additional time to file its response to FXG's motion for summary disposition and even allowed SBS to file its own (tardy) summary-disposition motion. *See* Doc. 6, Resp., 8 (noting that "SBS submitted 450 pages of briefing and exhibits that it claimed demonstrated that [FXG]" was not entitled to summary disposition); Doc. 2-2, Arb. Decision, 1 n.1 (indicating that the arbitrator considered the evidence submitted by both parties in support of their motions for summary disposition). Therefore, the Court cannot find that the arbitrator's decision to decline to hold her summary-disposition decision pending Palumbo's deposition constituted misconduct justifying vacatur. *See Gulf Coast Indus. Workers Union*, 70 F.3d at 850.

Third, the Court finds that SBS has not shown that it was prejudiced by the arbitrator's decision to move ahead without waiting for Palumbo's deposition. *See Laws*, 452 F.3d at 400. While SBS argued that Palumbo's deposition would have shown that "Palumbo lied" to the arbitrator when FXG represented that it did not consent to the assignments before terminating the ISP Agreement,

the arbitrator could have reasonably concluded that the evidence with which SBS apparently intended to confront Palumbo did not contradict his testimony and would not create a material fact issue. *See* Doc. 2-9, Emergency Submission, 3–4 (showing that the highlighted text reading "Consent Granted" follows the word "*Recommendation*" and that the forms refer to a "*Proposed Assignee*" (emphasis added)); Doc. 2-2, Arb. Decision, 1 n.1 (indicating that the arbitrator considered the evidence submitted by both parties and stating that "I have received a post[-]hearing submission from [SBS] . . . . Regardless of the propriety of such a filing, I have . . . considered it and the attached exhibits.").

In sum, as explained above, "[e]ven if [SBS] would have benefitted from a continuance, [it] still [has not] shown misconduct" in the arbitrator's failure to grant one, or in any refusal to hear evidence that may have resulted. *See Laws*, 452 F.3d at 400; *Gulf Coast Indus. Workers Union*, 70 F.3d at 850. Therefore, vacatur is not warranted under § 10(a)(3).

B.     *§ 10(a)(4)*

"[D]istrict courts' review of arbitrators' awards under § 10(a)(4) is limited to the 'sole question . . . [of] whether the arbitrator (even arguably) interpreted the parties' contract.'" *BNSF R.R. Co. v. Alstom Transp., Inc.*, 777 F.3d 785, 788 (5th Cir. 2015) (quoting *Oxford Health Plans LLC v. Sutter*, 569 U.S. 564, 569 (2013)). So long as "the arbitrator is 'even arguably construing or applying the contract or acting within the scope of his authority'" even a "serious error [of law or fact] does not suffice to overturn [the arbitrator's] decision." *Quezada v. Bechtel OG & C Constr. Servs., Inc.*, 946 F.3d 837, 844 (5th Cir. 2020) (quoting *Am. Eagle Airlines, Inc. v. Air Line Pilots Ass'n, Intern.*, 343 F.3d 401, 405 (5th Cir. 2003) (quoting *E. Associated Coal Corp. v. United Mine Workers of Am.*, 531 U.S. 57, 62 (2000))). However, vacatur is warranted under this provision when

"[a]n arbitrator . . . acts 'contrary to express contractual provisions.'" *YPF S.A.*, 924 F.3d at 818

(quoting *Beaird Indus., Inc. v. Loc. 2297, Int'l Union*, 404 F.3d 942, 946 (5th Cir. 2005)).

Here, SBS argues that the arbitrator's "errors were so egregious that she exceeded her power."

Doc. 2, Pet'r's Mot., 5. As discussed above, SBS claims to have "identified at least twenty-nine (29)

separate points of error, . . . [each] sufficient to vacate the arbitration award" under this provision

and the previous.[1] *Id.* For simplicity's sake, the Court has grouped SBS's numerous points of error

---

[1] FXG argues that many of these claims "commingle[] . . . [a] 'manifest disregard' [for the law] argument—that the arbitrator made factual and legal errors—with [an] argument that the arbitrator either exceeded her powers or executed them imperfectly." Doc. 6, Resp., 14. FXG claims this same argument "that the arbitrator exceeded [her] authority by misapplying [the relevant] law" has been recently rejected by the Fifth Circuit as a ground for vacatur. *Id.* (quoting *Quezada* 946 F.3d at 844). Though SBS does not use the term "manifest disregard," the Court agrees that these claims asserting alleged mistakes of law or fact resemble manifest disregard-type arguments. *See, e.g.*, Doc. 2, Pet'r's Mot., ¶ 1 ("A decision based on these statements has no basis in law[,] . . . prejudiced the right of SBS to a fair arbitration, and . . . lacked legal authority."); *c.f. Quezada*, 946 F.3d at 844 (finding the petitioner's "contention that the arbitrator failed to follow the law of this Circuit amounts to nothing more than a freestanding claim of manifest disregard for the law, a ground for vacatur this court has squarely rejected"); *McKool Smith, P.C. v. Curtis Int'l, Ltd.*, 650 F. App'x 208, 212 (5th Cir. 2016) (per curiam) (considering as "manifest disregard" claims a petitioner's claims that the arbitrator exceeded his authority when he allegedly misapplied Texas law).

However, it is not clear whether such claims are rejected in this Circuit where, as here, they are offered to prove that the arbitrator exceeded her authority in violation of § 10(a)(4). As the Fifth Circuit recently explained, "to the extent that manifest disregard of the law constitutes a nonstatutory ground for vacatur, it is no longer a basis for vacating awards under the FAA." *Jones v. Michaels Stores, Inc.*, 991 F.3d 614, 615–16 (5th Cir. 2021). But, it has not decided whether "manifest disregard" may still serve as a "judicial gloss on the enumerated" statutory grounds for vacatur, as some circuits have held. *Id.* at 616; *see also Wachovia Sec., LLC v. Brand*, 671 F.3d 472, 480 (4th Cir. 2012) ("[W]e find that manifest disregard continues to exist . . . as a judicial gloss [on the statutory grounds for vacatur]."); *Comedy Club, Inc. v. Improv W. Assocs.*, 553 F.3d 1277, 1290 (9th Cir. 2009) ("[M]anifest disregard . . . is shorthand for . . . § 10(a)(4)."); *Stolt–Nielsen SA v. AnimalFeeds Intern. Corp.*, 548 F.3d 85, 95 (2d Cir. 2008), *overruled on other grounds*, 559 U.S. 662 (2010).

Even if the argument survives as a gloss on §10(a)(4) in this Circuit, the Court finds no "manifest disregard" in the arbitrator's decision here. Under the old standard, an arbitrator's mere "error or misunderstanding with respect to the law" was not "manifest disregard." *McKool Smith*, 650 F. App'x at 212–13 (quoting *Prestige Ford v. Ford Dealer Comput. Servs., Inc.*, 324 F.3d 391, 395 (5th Cir. 2003)). Only if "the arbitrator appreciate[d] the existence of a clearly governing principle but decide[d] to ignore or pay no attention to it," was "manifest disregard" shown. *Id.* Because the Court does not find that any of the arbitrator's alleged legal and factual errors evince a "manifest disregard" for the law, it need not decide whether such disregard would satisfy the statutory requirements of § 10(a)(4). *See Jones*, 991 F.3d at 616;

-15-

related to § 10(a)(4) into six arguments for vacatur under this provision. *Supra* Part I(B)(2–7). These arguments are: (1) Erroneous Application of Pennsylvania Summary-Judgment Law. *See* Doc. 2, Pet'r's Mot., ¶¶ 1, 3, 6–7, 9, 11, 16, 19–21, 25–29. (2) Erroneous Application of Pennsylvania Procedural Law. *Id.* ¶ 23. (3) Considering Incompetent or Improper Evidence. *See id.* ¶¶ 2, 5, 14–18, 24. (4) Erroneous Factual Determinations. *See id.* ¶¶ 12–13, 22. (5) Insufficiently Stating Factual Basis. *See id.* ¶ 25. (6)  Misapplication of the ISP Agreement. *See id.* ¶¶ 4, 10. The Court considers each summarized claim below and finds that SBS has not carried its heavy burden to show that the arbitrator exceeded her authority. *See YPF S.A.*, 924 F.3d at 819.

### 1.        Erroneous Application of Pennsylvania Summary-Judgment Law

SBS first claims that the arbitrator erroneously applied the Pennsylvania law summary-judgment standard by granting summary judgment for FXG, despite the presence of what SBS argues were significant fact issues. Doc. 2, Pet'r's Mot., ¶ 1; *see also* ¶¶ 3, 6–7, 9, 11, 16, 19–21, 25–29 (providing additional examples of fact issues SBS claims precluded summary disposition for FXG).

"The standard for summary relief under [Pennsylvania] Rule 1532(b) is similar to the standard for summary judgment under the Rules of Civil Procedure." *Rohland v. Wakefield*, 226 A.3d 1224, 1227 (Pa. 2020). Summary judgment "may be granted if a party's right to judgment is clear and no material issues of fact are in dispute." *Id.*

The Court finds no error justifying vacatur under § 10(a)(4) in the arbitrator's application of Pennsylvania summary-judgment law. The arbitrator did not act contrary to express contractual provisions in applying this law. *See YPF S.A.*, 924 F.3d at 818. The relevant contract—the ISP

---

*Quezada*, 946 F.3d at 844.

Agreement—provides in relevant part that: "the arbitrator shall have the power to act upon motions for summary disposition," Doc. 1-11, ISP Agreement, ¶ 16.5(A), and that "[t]he agreement will be governed by and construed in accordance with the laws of the Commonwealth of Pennsylvania." *Id.* ¶ 18.10. The arbitrator acted in compliance with these contractual provisions by allowing each party to file, brief, and argue motions for summary disposition, and then applying Pennsylvania law in deciding those motions. *See* Doc. 2-2, Arb. Decision, 7–12 (setting out the Pennsylvania summary-judgment standard and then finding that there was no material fact issue about whether FXG lawfully terminated the agreement before the assignments were completed). Even if the arbitrator erroneously applied Pennsylvania law in concluding that no material issues of fact precluded summary judgment, the Court may not second guess the arbitrator's application of the contractually specified law.[2] *See Quezada*, 946 F.3d at 844; *Barker*, 633 F. Supp. 2d at 257 ("Regardless of whether the Arbitrator misapplied Federal Rule 56©, misapplication of the law is not grounds for vacating an arbitration award under the FAA.").

---

[2] If manifest disregard for the law may serve as "an additional judicial gloss on § 10(a)(4)," *see supra* n.1, these alleged errors do not evince such disregard. The arbitrator clearly recognized the applicable governing law because she stated the Pennsylvania summary-judgment standard and then applied it. *See* Doc. 2-2, Arb. Decision, 7 (quoting *Liss & Marion, P.C. v. Recordex Acquisition Corp.*, 983 A.2d 652, 657 (Pa. 2009); *c.f. Rent-a-Ctr v. Barker*, 633 F. Supp. 2d 245, 257 (W.D. La. 2009) (finding no grounds for vacatur when the arbitrator "laid out the relevant standard and proceeded to apply it"). Specifically, the arbitrator stated that no genuine issue of material fact remained as to whether: the assignment was completed, FXG's termination was justified, the termination was made in retaliation for Aaron's declaration, SBS breached the ISP Agreement or the Settlement and Release Agreement, or Aaron and other SBS employees committed acts that breached the "honesty and integrity" clause. Doc. 2-2, Arb. Decision, 8–9, 11–12; *c.f. Barker*, 633 F. Supp. 2d at 257 (declining to vacate an arbitrator's grant of summary judgment when "[t]he Arbitrator based his decision for summary judgment on thirty (30) specific findings of fact, which he found to be undisputed. . . . [and] the Arbitrator's fact-finding was based on deposition testimony and evidence presented by both parties").

2.        Erroneous Application of Pennsylvania Procedural Law

SBS next claims that the arbitrator erroneously applied Pennsylvania procedural law by finding that certain affidavits and testimony were not sufficient to create genuine issues of material fact. *See* Doc. 2, Pet'r's Mot., ¶ 23.

This argument fails, like the one before, because it is clear that the arbitrator applied Pennsylvania law, as the ISP Agreement specified. First, the arbitrator noted that under Pennsylvania law the procedural rules of the contractually-selected arbitration forum governed the action:

> [W]hile this arbitration is governed by the substantive law of Pennsylvania, the procedural rule set forth in *Nanty-Glo* has no application here *(Harleysville Mutual Casualty Co. v. Adair*, 218 A. 2d 791, 794 (Pa. 1966) ("When appellant, by its own contract, agreed to abide by the rules of the American Arbitration Association, it voluntarily surrendered the right to invoke any of the procedural devices which would be available in an action at law.").

Doc. 2-2, Arb. Decision, 8. Further, the arbitrator noted that if the *Nanty-Glo* rule SBS advocated for *had* governed the action, the arbitrator found it inapplicable to the evidence at issue:

> [R]egardless of the *Nanty-Glo* rule, [FXG] has presented affidavits, admissions, deposition testimony, documents and text messages. This is not the type of "testimonial evidence" which was of concern to the *Nanty-Glo* court. For example, the statements contained in Jade Eccleston's affidavits are corroborated by admissions by Symank as well as the text messages. *Sherman v. Franklin Regional Med. Ctr.*, 660 A. 2d 1370, 1372 (Pa. Super. Ct. 1995) ("An exception to [the *Nanty-Glo*] rule exists…where the moving party supports the motion by using admissions of the opposing party.").

*Id*.

The arbitration decision therefore indicates that the arbitrator was aware of and sought to apply Pennsylvania procedural law in accordance with the parties' contractual agreement. *See* Doc. 2-2, Arb. Decision, 7–8 (discussing the *Nanty-Glo* rule). So, even if the arbitrator inconsistently or incorrectly applied the specified law by finding that certain evidence was not sufficient to create

-18-

a material fact issue, the alleged error does not justify vacatur under § 10(a)(4). *See McKool Smith*, 650 F. App'x at 212–13.

     3.     <u>Considering Incompetent or Improper Evidence</u>

Next, SBS claims that the arbitrator considered incompetent or improper evidence, including hearsay evidence, and evidence that should have been excluded because of the Settlement and Release Agreement. *See* Doc. 2, Pet'r's Mot., ¶¶ 2, 5, 14–18, 24. But SBS has not shown how considering this evidence was contrary to the parties' contractual agreements.

The ISP Agreement provides in relevant part that:

> [A]ny dispute that would be recognized in a court of appropriate jurisdiction, including any claim or controversy between the Parties arising since the effective date of this Agreement and . . . relating in any way to this Agreement and/or the relationship between the Parties resulting from this Agreement . . . shall be determined by final binding arbitration.

Doc. 1-11, ISP Agreement, ¶ 16.3. The Agreement also provides that: "Except as expressly modified in this Section . . . , the arbitration shall be administered pursuant to . . . the JAMS Streamlined or Comprehensive Arbitration Rules and Procedures." *Id.* ¶ 16.5(A).

Though SBS argues (as discussed above) that Pennsylvania evidentiary rules should have been applied, Doc. 2, Pet'r's Mot., ¶ 18, the relevant agreement provides that the arbitrator would apply the specified JAMS Rules and Procedures. Doc. 1-11, ISP Agreement, ¶ 16.5(A). It is well-established that "the usual rules of evidence do not apply" in an arbitration proceeding because arbitration is intended to be a streamlined, informal alternative to traditional litigation. *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 57 (1974); *see also AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 345 (2011) ("[T]he informality of arbitral proceedings is itself desirable, reducing the cost and increasing the speed of dispute resolution."). When reviewing an arbitration proceeding, generally,

alleged errors made in admitting or excluding evidence will not justify vacatur unless the evidentiary consideration was fundamentally unfair. *See Gulf Coast Indus. Workers Union*, 70 F.3d at 848.

The record does not show any fundamental unfairness in the arbitrator's decisions to consider or exclude evidence. Each party submitted voluminous evidence in support of its motion to dismiss and in opposition to its opponent's, and the arbitrator indicated that she considered all such evidence, even SBS's post-hearing submission. *See* Doc. 6, Resp., 8 (noting that SBS "submitted 450 pages of briefing and exhibits that it claimed demonstrated that [FXG]" was not entitled to summary disposition); Doc. 2-2, Arb. Decision, 1 n.1 (indicating that the arbitrator considered the evidence submitted by both parties and stating that "I have received a post-hearing submission from [SBS] . . . [r]egardless of the propriety of such a filing, I have . . . considered it and the attached exhibits.").

Further, the arbitrator did not act contrary to the contractual provisions by considering evidence gathered by FXG's investigations into all of SBS's alleged violations of the ISP Agreement, even those occurring before the execution of the Settlement and Release Agreement. SBS claims evidence of "purported violations that occurred prior to September 11, 2018" should not have been considered since "FXG waived . . . [claims for these violations] by signing the mutual settlement and release agreement." Doc. 2, Pet'r's Mot., ¶ 5. However, the ISP Agreement provides that "any claim or controversy between the Parties arising since the effective date of this Agreement and . . . relating in any way to this Agreement and/or the relationship between the Parties resulting from this Agreement" is subject to arbitration under the agreement. Doc. 1-11, ISP Agreement, ¶ 16.3. Interpretation of the parties' later Settlement and Release Agreement—including its validity, its alleged violation, and its impact or lack thereof on the attempted assignments—is within the scope of this arbitration clause because it arose after the effective date of the ISP Agreement and related

to the parties' relationship as established by the ISP Agreement. *See* Doc. 2-2, Arb. Decision, 9–12 (discussing the relationship between the original ISP Agreement and the Settlement and Release Agreement). It was therefore neither improper nor fundamentally unfair for the arbitrator to consider evidence pertaining to all claims at issue between the parties, including those SBS claims FXG waived in the Settlement and Release Agreement. *See Gulf Coast Indus. Workers Union*, 70 F.3d at 848.

### 4.     Erroneous Factual Determinations

SBS further claims that the arbitrator made erroneous factual determinations by crediting the findings of the FXG internal report, believing the allegations made against SBS's owners and drivers, and resolving other disputed matters against SBS. *See* Doc. 2, Pet'r's Mot., ¶¶ 12–13, 22. SBS also claims that the arbitrator erred by declaring that there was no genuine fact issue about whether it violated the "honesty and integrity" clause because "honesty and integrity" are ambiguous terms undefined by the ISP Agreement and "[Pennsylvania] law is clear that the resolution of an ambiguous contractual standard is a fact issue." *Id.* ¶ 6 (citing *Commonwealth by Shapiro v. UPMC*, 208 A.3d 898, 910 (Pa. 2019)); *see also id.* ¶ 28 (making essentially the same argument).

Even if the arbitrator made errors in determining issues of fact as SBS claims, such errors do not warrant vacatur. Courts "refrain from commenting on the correctness or incorrectness of the arbitrator's factual findings" and are bound by those findings. *McKool Smith*, 650 F. App'x at 213 (quoting *Loc. Union 59, Int'l Bhd. of Elec. Workers v. Green Corp.*, 725 F.2d 264, 268 (5th Cir.1984)); *Timegate Studios Inc. v. Southpeak Interactive, L.L.C.*, 713 F.3d 797, 803 (5th Cir. 2013). As discussed above, the arbitrator's factual findings were within the authority granted by the ISP Agreement. This Court cannot disturb them. *See McKool Smith*, 650 F. App'x at 213.

5.        Insufficiently Stating Factual Basis

SBS next claims that the arbitrator's decision stated that there were multiple violations upon which a reasonable fact finder could reasonably find that SBS breached the "honesty and integrity" clause, but did not list the specific facts on which she relied. *See* Doc. 2, Pet'r's Mot., ¶ 25.

The Court finds that the arbitrator's decision sufficiently states the evidence from which she concluded that no genuine issue of material fact precluded finding that FXG's termination of the agreement with SBS was justified. *See* Doc. 2-2, Arb. Decision, 9; *c.f. Rent-A-Ctr.*, 633 F. Supp. 2d at 257 (declining to vacate an arbitrator's grant of summary judgment when "[t]he Arbitrator based his decision for summary judgment on thirty (30) specific findings of fact . . . [and] the Arbitrator's fact-finding was based on deposition testimony and evidence presented by both parties"). The arbitration decision lists multiple points of evidence on which the arbitrator based her determination that SBS committed a "material breach," including that "[Aaron] admitted under oath that he did in fact pretend to be an HR representative from two previous employers of prospective employees . . . [and] there is no evidence that [the former employer] . . . authorized . . . [Aaron] to actually pretend to be an employee of [the employer]," the impersonation "happened on multiple occasions," SBS employees "misuse[d] . . . badges to permit [unauthorized] drivers to operate for [FXG]," and that an FXG employee "observed Tilley and Addison . . . logging into a scanner using badges other than their own." Doc. 2-2, Arb. Decision, 3–4. And as discussed above, even if the arbitrator erroneously concluded that these facts supported summary disposition for FXG and no facts precluded it, such an error would not justify vacatur because the arbitrator was acting within the scope of the parties' agreement in determining these claims. *See McKool Smith*, 650 F. App'x at 213.

-22-

6.      Misapplication of the ISP Agreement

Finally, SBS claims that the arbitrator improperly applied the ISP Agreement by considering terms conditioning FXG's agreement to forebear from terminating its agreement with SBS when those conditions were not contained in the ISP agreement and alternatively "FXG waived those terms when it consented to the transfers." *See* Doc. 2, Pet'r's Mot., ¶ 10.  SBS also claims that the arbitrator failed to correctly apply the terms of the ISP Agreement when it refused to allow SBS to depose Palumbo before deciding the summary-disposition motions. *Id.* ¶ 4.

As discussed above, the Court finds that the arbitrator did not act contrary to the ISP Agreement by considering any terms that SBS claimed FXG waived. *See id.* ¶ 5, 10. By its terms, the ISP Agreement's arbitration clause extends to "any claim or controversy between the Parties arising since the effective date of this Agreement and . . . relating in any way to this Agreement and/or the relationship between the Parties resulting from this Agreement." Doc. 1-11, ISP Agreement, ¶ 16.3. Specific to this claim, the termination notice containing the disputed conditions was sent after the effective date of the ISP Agreement and related to the parties' relationship established in that Agreement. *See* Doc. 1-4, Termination Letter, 2. Therefore, even if the arbitrator did improperly apply or interpret the letter in light of the ISP Agreement or Settlement and Release Agreement it was not contrary to the parties' agreement and would not warrant vacatur under § 10(a)(4).

To be clear, nor did the arbitrator act contrary to the ISP Agreement's terms by denying the Palumbo deposition after the hearing on the dispositive motions. The ISP Agreement states in relevant part that "[u]nless the parties agree otherwise or the arbitrator rules on a showing of good cause, discovery will be *limited to* . . . three depositions per side." Doc. 1-11, ISP Agreement, ¶¶ 16.5(C) (emphasis added). SBS's argument that the arbitrator acted contrary to the Agreement,

exceeding its authority, when she "did not allow SBS to take depositions pursuant to its ISP Agreement with FXG[,]" though that Agreement "allows for three separate depositions by each party[,]" therefore fails. Doc. 2, Pet'r's Mot., ¶ 4. SBS was not entitled to three depositions. It was entitled to no more than three depositions. *See* Doc. 1-11, ISP Agreement, ¶ 16.5(C). And as discussed above, there is no evidence that any misconduct by the arbitrator prevented Palumbo's timely deposition. *See supra* Part III(A) (discussing Doc. 2-9, Emergency Submission, 2 n.1).

For all these reasons, the Court finds that the arbitrator did not exceed her authority and that vacatur is not warranted under § 10(a)(4).

## IV.

## CONCLUSION

For the reasons stated above, the Court **DENIES** SBS's motion to vacate the arbitration award.

SO ORDERED.

SIGNED: January 28, 2022.


JANE J. BOYLE
UNITED STATES DISTRICT JUDGE

-24-